JORDAN & PARKER *et al.* v. JOHN F. NEWSOME and GEORGE
COWPER, Trustee.

(Decided May 22,.1900.)

*Deed of Assignment—Feigned Debt—Bona Fide Debts—Irregular Allotment of Homestead—Non-Joinder of Wife in the Assignment.*

1. A preferred debt secured to a mother-in-law of the assignor, who lives with him, and which will absorb most of the assets, without any evidence of its correctness, should be regarded as a feigned debt, and as such should be eliminated from the assignment.

2. When the deed oɪ assignment is made part of the complaint, the debts included and not assailed are to be regarded as *bona fide*.

3. A homestead reserved, but irregularly allotted will be re-allotted under direction of the Court.

4. Where homestead is reserved, the wife of assignor is not a necessary party to the deed of assignment.

CIVIL ACTION to impeach and set aside a deed of assignment from Newsome to Cowper, trustee, for fraud and irregularity, heard before *Bowman, J.,* at Spring Term, 1899, of HERTFORD Superior Court.

There was evidence on the part of the plaintiff that the homestead reserved and allotted was worth over $2,000, and was allotted by friends and neighbors without notice to creditors; that one of the largest preferred creditors was Mrs. Parker, mother-in-law of Newsome, and who lived with him; the deed of assignment was made part of the complaint, the wife of Newsome was not a party to it.

At the close of plaintiffs' evidence the defendants moved for judgment as of nonsuit, which was allowed by his Honor. The plaintiffs excepted and appealed.

MONTGOMERY, J., writes the opinion.

FURCHES, J., writes dissenting opinion.

*Messrs. Winborne & Lawrence,* for appellants.
*Mr. George Cowper,* for appellee.

MONTGOMERY, J.   This action was commenced by the plaintiffs, creditors of the defendant John F. Newsome, for the purpose of having a deed of assignment made by Newsome declared fraudulent and set aside, and that the allotment of the homestead to the debtor be declared irregular and void. The deed of assignment was made to George Cowper, Trustee, was dated January 2, 1893, set out the defendant's insolvency, and, after reserving to the debtor the homestead and personal property exemptions allowed him by law, conveyed the property, real and personal, of the debtor.   The trustee was authorized to take possession of the property, collect the assets, sell the property and dispose of the proceeds as follows:

"1. Allot and set apart to said Newsome his homestead and personal property exemptions allowed him by law.

"2. Deduct and retain such costs and expenses as shall be necessary for the proper execution of the trust, together with 5 per cent commissions on receipts and disbursements.

"3. Pay the Camp Manufacturing Company, a corporation duly chartered and organized, the sum due it by account, which is supposed and believed by the grantor to be about $1,500.

"4. Pay George Cowper $200.

"5. Pay Mrs. Elizabeth A. R. Parker, widow of the late King Parker, $1,500, for money borrowed of her and now due.

"6. The remainder, the said George Cowper shall distribute *pro rata* amongst each and every one of my creditors according to their respective claims.   But before any sale is had, the said George Cowper shall allot and set apart to said

Newsome his homestead and personal property exemptions allowed him by law."

The plaintiff on the trial introduced evidence tending to prove that the real estate of the defendant debtor had been allotted to him, at the request of the trustee, by three of his neighbors, without notice to creditors, and that the land was worth from $2,000 to $3,000 at the time of the allotment; that Mrs. Parker, one of the preferred creditors, lived with Newsome at the time when the assignment was made, and was his wife's mother. At the conclusion of the plaintiff's evidence, the defendant moved to dismiss the action under the Act of 1897. The plaintiff requested the Court to instruct the jury that if they believed the evidence they should answer in the affirmative the first and second issues: 1. Was the deed of assignment   *   *   *   made with intent to hinder, delay and defraud the creditors of John F. Newsome? 2. Were the debts set out in the deed of assignment or any substantial part of them feigned and fictitious?; that the homestead exemptions had been allotted contrary to law; that the deed of assignment having been attacked for fraud, the defendants were required to show that the debts therein secured, or some substantial part of them, were genuine, and unless they had been so shown, the jury should answer the first issue, "Yes;" that there was no evidence of the genuineness of these debts or any part of them, and the jury should respond to the first and second issues, "Yes;" that the assignment having been executed by John F. Newsome alone, and his wife not joining with him, and the judgments of the plaintiffs having been taken subsequently to the assignment and the defendant Newsome being insolvent at the time, the assignment is void as to creditors and the plaintiffs.

The instructions were all, except the one which concerned the second issue, properly refused. Neither the

preference by the debtor of the claim of his mother-in-law, Mrs. Parker, nor the manner of the allotment of the homestead constituted a presumption of such a fraudulent intent, on the part of Newsome in the execution of the deed of assignment, as to make it void as to the genuine debts embraced in it.    On that issue they were only badges of fraud to be left to the jury upon all the facts and surrounding circumstances.    Even if Mrs. Parker's debt was and is feigned and fictitious, that would not render the deed fraudulent as to the other creditors.    That debt could be eliminated from the assignment and the deed would stand as to the good debts. *Morris v. Pearson,* 79 N. C., 253.

We think, however, that his Honor should have instructed the jury on the second issue to have answered that the debt of Mrs. Parker was feigned and fictitious.    That debt was assailed by the plaintiffs.    She was, as we have said, living in the home of the defendant debtor at the time of the execution of the deed of assignment, and she was the mother of his wife.    With the exception of one creditor, she was given the preference over all the others, and according to the evidence, the preferred debts would have absorbed all of the property of the debtor outside of his exemptions.    Neither she nor the defendants made any effort on the trial to show the *bona fides* of her debt.    *Brown v. Mitchell,* 102 N. C., 347; *Hinton v. Greenleaf,* 118 N. C., 7; *Redmond v. Chandley,* 119 N. C., 575.

We have said enough to send this case back for a new trial already, but there are other matters of importance before us in the case, which will be sure to arise on the next trial, and which we will consider now.

The plaintiff's fourth and fifth prayers for instruction embrace the contention that, because the deed of assignment was attacked as fraudulent, the defendants were required

to show that the debts therein secured, or some substantial part of them, were genuine, and that as there was no evidence of the genuineness of any of these debts, the jury should find the first and second issues affirmatively. It is a sufficient answer to that position of the plaintiffs to say that their complaint alleges that their debts were in existence at the time of the execution of the deed and they make the assignment a part of their complaint, and, in it, it appears that the plaintiffs' debts are included as general creditors. Besides, the plaintiff Parker, in his evidence, speaks of his debt against Newsome, and declares it to be a valid debt, not in so many words, it is true, but by an implication so strong as to amount to a positive declaration about it. He said, "I had not sued Newsome when the deed of assignment was made." There was no need of any evidence in this case to show the existence of genuine debts, for the plaintiffs had alleged such debts in their complaint, and no issue therefore could have arisen on the pleadings. There can be no application here of the rule that where a party intends to use pleadings as evidence he should put them in evidence, and therefore that the defendant, before he could avail himself of the plaintiff's complaint in reference to the existence of genuine debts, should have introduced that part of the complaint in evidence. The Court had charge of the pleadings, and it was its province to act upon the record and to apply the admissions of the parties and such other evidence as might appear in it. As we have said, there was no need for the intervention of a jury on this point, as no issue was raised on it by the pleadings. *Smith v. Nimocks,* 94 N. C., 243.

The seventh of the plaintiff's prayers for instruction, was to the effect that as the assignment had been executed by Newsome without the joinder of his wife, and that as the plaintiff had procured judgments against Newsome subsequently

to the assignment, and that as Newsome was insolvent at the time, the assignment was void as to creditors. The case of *Thomas v. Fulford,* 117 N. C., 667, is cited as authority for the position. That case is verily a Pandora's Box, and we will not open it. It does not support the contention of the plaintiff. The execution of the deed of assignment by defendant Newsome does not violate sec. 8, of Art. X, of the Constitution of North Carolina. Newsome reserved most carefully to himself his homestead exemptions from the operation of the deed. And one of the special trusts in the deed was that the trustee should lay off and allot to him his homestead exemptions before a sale of any of the property conveyed in the deed was made by the trustee.

The allotment of the homestead by the trustee was irregular and can not stand. The *statutory* methods by which homesteads are allotted are by petition and by execution. But this Court held in *Littlejohn v. Egerton,* 77 N. C., 379, and also in *Benton v. Collins,* 125 N. C., 83, that there were other methods besides those, and that where the Superior Court got control of the homestead lands the Court itself could appoint three commissioners or instruct the Clerk of the Court to appoint the commissioners to lay off the homestead, giving at the same time notice to the homesteader "and in all particulars to observe as near as may be the requirements of the Constitution and of the Homestead Act." We suggest that the last-named plan for the allotment to the defendant of his homestead be followed in this case by the Court below.

New trial.

FURCHES, J., dissenting. I dissent from the opinion of the Court in this case upon two grounds:

First. For the reason that the only mention made in the deed of assignment to the homestead is the following para-

graphs: "1. Allot and set apart to said Newsome his home-stead and personal property exemptions allowed him by law." "6. But before any sale is had, the said George Cowper shall allot, lay off and set apart to the said Newsome, his home-stead and personal property exemptions allowed him by law."

These paragraphs are contained in the powers conferred on the assignee Cowper, and nowhere else. They undertake to authorize him to do what he can not do—to lay off the assign-or's homestead and personal property exemptions. There is not a word excepting the homestead or personal property exemption, unless it is contained in the paragraphs I have quoted; and I do not understand them to amount to an exception of a homestead.

Second. In my opinion the deed is void for the reason that the wife did not join in its execution. Constitution of North Carolina, Art X, sec. 8.